# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| JAMES LAVERN GORDON, JR., | ) | |
| | ) | |
| v. | ) | Case No. CV610-103 |
| | ) | CR607-015 |
| UNITED STATES OF AMERICA | ) | |

## REPORT AND RECOMMENDATION

Having unsuccessfully appealed his conviction for conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2, *United States v. Gordon*, 341 F. App'x 588 (11th Cir. 2009), James Lavern Gordon, Jr., moves this Court for 28 U.S.C. § 2255 relief. CR607-015, doc. 117. The government moves to dismiss, doc. 123. For the following reasons, its motion should be granted.

The *Gordon* court supplied relevant background facts while rejecting movant's insufficient-evidence claim on direct appeal:

> A rational trier of fact could conclude there was a conspiracy to possess and distribute cocaine, as a search of the hotel room in which Gordon and codefendant Debra Ann Vernon, his common law wife, were staying revealed cocaine, bundles of cash, firearms, packaging supplies, and drug paraphernalia. Considering Gordon's inhabitation of the hotel room, and also his past involvement in drug offenses, a rational trier of fact could conclude Gordon knew of the conspiracy's objective and knowingly participated in it.

*Gordon*, 341 F. App'x at 590.

## A. Sufficiency of the Evidence

Turning to Ground Three first, Gordon argues that "the government failed to present any evidence to support the conspiracy allegations alleged in the indictment." Doc. 117 at 4.[1] Since he already raised that issue on appeal, he cannot re-raise or repackage it here. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Buckelew v. United States*, 575 F.2d 515, 517–18 (5th Cir. 1978) ("a matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal").

Gordon insists he "is not challenging the sufficiency of the evidence as raised on direct appeal, he's challenging the fact that there was *no* evidence." Doc. 124 at 8 (emphasis added). There is no evidence, he continues, of an agreement between him and his wife, there were no fingerprints traceable to him, no pictures, surveillance videos, and so on. *Id.* at 8-9; *see also* doc. 118 at 20-25. Of course, that's repackaging by

---

[1] All documents referenced here have been "E-filed." The Court is thus using the electronic, screen-page pagination inserted onto the top of each page by the Court's CM/ECF software.

2

any other name. The *Gordon* panel said that the "hotel room" and prior crimes evidence was enough; the government did not have to show the other evidence Gordon now cites. Gordon cannot prevail simply by ignoring the *Gordon*-illuminated evidence. Ground Three therefore fails.

## B. Ineffective Assistance

In Grounds One and Two Gordon raises ineffective assistance of counsel (IAC) claims.[2] He faults his trial and appellate counsel, Jesse C.

---

[2] As the Eleventh Circuit recently stated:

> To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In determining whether counsel gave deficient assistance under *Strickland*, "[t]he test for reasonableness is not whether counsel could have done something more or different; instead," the movant must show that counsel's performance fell outside the "wide range" of professionally competent assistance. *Payne v. Allen*, 539 F.3d 1297, 1317 (11th Cir. 2008) (quotation marks omitted).
>
> To establish prejudice under *Strickland*, the movant must show more than that the error had "some conceivable effect on the outcome of the proceeding." *Marquard v. Sec'y, Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation marks omitted). "Rather, the [movant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

*Jones v. United States,* 2011 WL 4425315 at * 3 (11th Cir. Sep. 23, 2011). Here, then, Gordon must "plead and prove that (a) counsel erred; (b) no reasonable lawyer would have done what h[is] lawyer did; and (c) his act or omission was outcome-altering." *Fortson v. Davis*, 2011 WL 5148662 at * 2 (S.D. Ga. Oct. 6, 2011).

Stone, for failing to move to suppress the "hotel room evidence." Doc. 117 at 4-5; doc. 118 at 5-20; doc. 124 at 1-8. He thus must prove that this claim would have been meritorious and would have made an outcome-altering difference had the evidence been excluded. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006); *United States v. Smith*, 2011 WL 4904404 at * 8 (N.D. Fla. Sep. 23, 2011).

Had Stone litigated the issue, it would have been Gordon's burden to show that he had a legitimate expectation of privacy in the searched hotel room. *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007); *United States v. Cooper*, 203 F.3d 1279, 1283-84 (11th Cir. 2000); *United States v. Golphin*, 2011 WL 2446561 at * 1 (M.D. Fla. Jun. 15, 2011).[3] The government says Stone would have lost that motion. Doc. 123. Gordon disagrees. Doc. 124.

---

[3] Stone would have been required to support his motion "in every critical respect . . . [with] definite, specific, detailed, and nonconjectural [evidence] to enable the court to conclude that a substantial claim is presented. . . ." *Cooper*, 203 F.3d at 1284 *United States v. Thompson*, 171 F. App'x 823, 828 (11th Cir. 2006); *Golphin*, 2011 WL 2446561 at * 3 (denying hotel-room claim because defendant failed to show his occupancy status; "Without more, the quality of Defendant's occupancy status is indefinite, unspecific, and conjectural, and the Court cannot hold that society would recognize Defendant's subjective expectation as reasonable").

4

The evidence shows that in February 2006, both Gordon and Debra Vernon stayed in room 229 at a Metter, Georgia hotel. Vernon rented it plus rooms 209 and 211 in her name, paying cash up front for all three. Doc. 108 at 52-55. On the day in question hotel maid Audry Johnson serviced room 211 and spotted "some stuff on the bed, the little packs with white powder stuff in it. And there was some on the dresser also." Doc. 108 at 39-40. She counted "three or four bricks." *Id.* at 41. Gordon does not claim that Johnson acted on behalf of the police or otherwise invaded anyone's privacy. She was, after all, the maid.

Johnson told her supervisor, who called their boss, Wes Clifton, who called the police. *Id.* at 40. Johnson also spotted a wrapper (from cut-open packs) in the garbage that she had removed from the room. *Id.* at 41. She gave that to Clifton, too, and he likewise handed it over to the police. *Id.* Meanwhile, Johnson next proceeded on to room 209, where "you could really smell the smell of marijuana had been smoked in there, or had previously been smoked in there. And when I did that, I also seen some bags in there on the bed. So I just -- and when I went to turn around and come out, that's when I r[a]n into [a black male with short dredlocks]." *Id.* at 41-42. She cleaned the room for a while but left after

the black male asked her to stop. *Id.* at 42. She then noticed "two or three guys [that] came out of the Room 211. And the first man that she encountered ran toward Room 229. And "[w]hen I went to go out, there was some guys come out of the Room 211, with a big black tote bag and ran down to [Room] 229. *Id.* In all, she saw "about five of six" people in the three rooms. *Id.* at 43.

Clifton, too, determined that three rooms were "associated with this group of people." *Id.* at 50. While awaiting the police he "killed the keycards" for each room and later provided the police with the rooms' registration cards. *Id.* at 50-51. He confirmed to the police that co-defendant "D Vernon" (Debra Vernon) paid cash for Rooms 209, 211 and 229. *Id.* at 52-55. After Clifton "killed the keys" no individual ever returned to the rooms. *Id.* at 66. Nor did anyone ask to re-enter them. *Id.* at 67.

The police arrived, field-tested the "wrapper," and found cocaine residue. Doc. 108 at 73-75. 89. Then armed with *ample* probable cause, an officer left to get a search warrant for the rooms. *Id.* at 79, 80. While the police interviewed Clifton and Johnson, Vernon and Gordon pulled up in their car. *Id.* at 75-76. Vernon acknowledged that she had rented

rooms 209 and 211, and that she and Gordon were residing in 229. *Id.* at 76, 108. The police told them that they could not enter any of the rooms but were free to leave, which they did. *Id.* at 78-79. The police obtained and executed search warrants on all three rooms, plus the car that the defendants had pulled up in and simply left behind. Doc. 108 at 80-81. *Id.* Their search turned up no evidence from Room 209, *id.* at 81, but they found cocaine in rooms 211 and 229. *Id.* at 83-84.

Gordon does not dispute that he stayed only in Room 229. He thus has *no* standing to challenge the search of any other rooms. Hence, his assertions about what the police did or failed to do with respect to the other rooms is irrelevant. For that matter, he does not even show that the police, based on what they learned from Johnson, Clifton, and the field-test, did not have probable cause to support the warrant. So even if Gordon did have standing to say anything about the search of the other rooms, his claim fails because the police had probable cause and Gordon shows no search warrant defect.[4] Hence, Gordon cannot show either

---

[4] The Court disregards Gordon's accusation that the police mishandled evidence from one room to another, doc. 118 at 18-20, as he cites no evidence in support.

deficient performance or prejudice. These Grounds thus also fail. It therefore is not necessary to reach the government's other arguments.

## C. Prior Convictions

In Ground Four Gordon complains of Stone's failure to appeal the sentencing judge's "abuse of discretion" in considering temporally "remote" convictions to enhance his sentence under 21 U.S.C. § 851. These were, he says, "minor drug offenses which occurred over ten (10) years prior to the present instant crime. . . ." Doc. 118 at 25-26. As "plain error" that Stone should have raised on appeal, Gordon also says the prosecution (and thus, the sentencing judge) impermissibly "double counted" his 1993 state court conviction to enhance Gordon's sentencing level to "Career Felon status." *Id.* at 28-29. Finally, the judge also abused his discretion in admitting those crimes at trial, in violation of Fed. R. Evid. 403 and 404. *Id.* at 26-27. The Court agrees with the government (doc. 123 at 14) that Stone cannot be found ineffective because he actually raised these arguments on appeal. *Gordon*, 341 F. App'x at 589.

Accordingly, the government's motion to dismiss (doc. 123) must be **GRANTED**, and Gordon's § 2255 motion must be **DENIED**. Doc.

117. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this <u>14th</u> day of November, 2011.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA